CORNING and others *vs.* MURRAY and others.

M. executed a mortgage to Church, to secure the payment of $200, dated July 11, 1842, and recorded July 12, at 5 o'clock P. M.  At the same time M. executed another mortgage upon the same premises to Crofoot, to secure the payment of $90.  Both mortgages purported to be given for the purchase money.  It appeared that Church was the owner of the premises, and had contracted to sell them to Crofoot for $200; that the latter transferred his interest to M. for $100, of which sum he received in cash $10, and at Crofoot's request the deed was executed to M., who, instead of Crofoot, executed the mortgage to Church for the purchase money.  The mortgage to Crofoot was recorded July 12, 1842, at 3 o'clock P. M. and was assigned by the mortgagee, for a valuable consideration, to the defendants, who took the same without notice.  On a bill by the assignee of the Church mortgage, to foreclose the same; *Held* that the defendants were entitled to protection as bona fide purchasers; and that the Crofoot mortgage having been first recorded was entitled to a preference over the Church mortgage.

IN EQUITY.  The bill in this cause was filed to foreclose a mortgage executed by the defendant Murray to one Church, to secure the payment of $200.  The mortgage was dated July 11, 1842, and was recorded on the next day at 5 o'clock P. M. Simultaneously with the execution of this mortgage, another mortgage was executed by Murray to one Crofoot, upon the same premises, to secure the payment of $90.  Both mortgages purported to have been given for the purchase money of the mortgaged premises.  It appeared that Church was the owner of the premises, and had contracted to sell them to Crofoot for $200; that Crofoot transferred his interest to Murray for $100, of which he received in cash $10, and at his request the deed was executed to Murray, who, instead of Crofoot, executed the mortgage to Church for the purchase money.  The mortgage to Crofoot was recorded on the 12th day of July, 1842, at 3 o'clock P. M.  This mortgage was assigned by Crofoot to the defendants Daniel and Major Dana.  The plaintiffs were assignees of the Church mortgage.

Corning *v.* Murray.

*G. Stone & J. A Millard,* for the plaintiffs.

*T. T. Davis,* for the defendants Daniel and Major Dana.

HARRIS, J.    The question between the parties relates to the priority of one or the other of two mortgages executed at the same time by the defendant Murray.    The Crofoot mortgage was recorded a few hours before the Church mortgage, and the Danas, who are the assignees of this mortgage, insist that having purchased the mortgage in good faith and for a valuable consideration, without notice of any prior equities in favor of the Church mortgage, they, as such *bona fide* purchasers, are entitled to have this mortgage declared to be the first lien upon the premises.    On the other hand the plaintiffs claim that their mortgage alone was in fact executed to secure the purchase money of the premises, and therefore is entitled to a preference.    There can be no doubt, I apprehend, that as between the original parties to the mortgages, the plaintiffs are right in their position.    The transaction is to be regarded the same in effect, as if Church had conveyed the premises to Crofoot and had received from him a mortgage to secure the purchase money, and then Crofoot had conveyed to Murray subject to his mortgage to Church, and received the second mortgage to secure the balance of this purchase money.    In such a case a court of equity would postpone the second mortgage to the first, even though the latter were recorded, afterwards or were not recorded at all.    The question then is, whether the assignees of the Crofoot mortgage took it subject to the same equities in favor of the Church mortgage to which it would have been subject had it remained in the hands of Crofoot; or whether, having purchased it without notice of facts which would have postponed it to the Church mortgage while in the hands of Crofoot, they are entitled, as purchasers in good faith and for a valuable consideration, to have it declared a prior lien upon the premises, by reason of its having been first recorded.    In other words, the question is whether the Danas stand in the place of their as-

signor, and hold their mortgage subject to all the equity which Church and his assignees had against Crofoot.

In the absence of any circumstances to control the operation of the recording act, the mortgage to Crofoot, being first recorded, would be entitled to a preference. This preference was defeated by Crofoot's knowledge of the mortgage to Church and of the superior equities in favor of that mortgage. But the mortgage was assigned by Crofoot without any notice of the circumstances under which it was executed. The assignees had a right to believe, and so far as it appears from the testimony did believe, that the mortgage was, what the record showed it to be, the first lien upon the mortgaged premises. The assignment of the mortgage by Crofoot, without notice of the circumstances which, in equity, would postpone it to the Church mortgage, was undoubtedly a fraud upon the holder of the latter mortgage. But as it is not pretended that the Danas had notice of such circumstances, their purchase cannot be affected by Crofoot's fraud. I understand it to be well settled that where one affected with notice conveys to one without notice, the latter shall be protected equally as if no notice had ever existed. (*Jackson* v. *Given*, 8 *John.* 137. *Jackson* v. *Van Valkenburgh*, 8 *Cowen*, 260.) Nor is the case within the rule that an assignee of a *chose in action* takes it subject to all the equities existing against it in the hands of the assignor. The only application that has ever been made of this rule is that the original debtor can make the same defence against the assignee that he could have made against the assignor. The reason of this distinction is well stated by Chancellor Kent in *Murray* v. *Lilburn*, (2 *John. Ch.* 441.) " The assignee can always go to the debtor, and ascertain what claims he may have against the bond, or other chose in action, which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee." If this were not so, it is obvious that no assignment could ever be taken with safety. (*See also Livingston* v. *Dean*, 2 *John. Ch.* 479.)

This case is clearly distinguishable from that of *Stafford* v.

Corning *v.* Murray.

*Van Rensselaer,* (9 *Cowen,* 316.) There two mortgages were executed by the purchaser of land, under circumstances not unlike those which appear in this case. One of the mortgages was held by Van Rensselaer, the original owner of the land, for the purchase money. The other was assigned by Van Dusen, who had purchased of Van Rensselaer and sold to Wright the mortgagor, to Stafford. It was held that Van Rensselaer's mortgage was entitled to a preference; but it was on the ground that the statute of registry had no application to the case. Both mortgages were executed and *registered at the same time.* Neither party could therefore claim *priority* under the act. "Their being registered at the same time," says Sutherland, J. in delivering the opinion of the court for the correction of errors, "does not exclude the operation of any facts or circumstances which go to show that the one ought equitably to be preferred to the other." But in the case before me the recording act *does apply.* One of the mortgages was recorded before the other. It thereby acquired a legal preference over the other. It was assigned to the Danas without notice of the circumstances which would have defeated that preference had it remained in the hands of the mortgagee. Being the assignees for a valuable consideration and without notice, they are entitled to protection as bona fide purchasers.

There must be a decree, therefore, declaring the preference of the mortgage assigned to the Danas over the other mortgage, and directing the amount of that mortgage, together with the costs of the defendants Dana, to be first paid out of the proceeds of the mortgaged premises. In other respects the decree is to contain the usual provisions.