By the Court.—Ingraham, J.
The action was brought for a dissolution of a copartnership between the plaintiff and the defendant Wotherspoon, and an accounting. Defendant McTavish was joined as a party on the ground, as alleged in the complaint, that there had been transferred to him a seat in the New York Cotton Exchange, which was the property of the copartnership, and which defendant Wotherspoon to secure some private liability had wrongfully transferred to said defendant McTavish, who well knew that said seat was partnership property. The relief asked against defendant McTavish, is that, he account for said seat in the New York Cotton Exchange, or the value thereof.
The certificate of membership in-question certifies that George Wotherspoon is a member of the New York Cotton Exchange and that said certificate may be transferred upon the books of the Exchange to any member, or member elect, and is signed by the president and treasurer. This seat was purchased by the firm, and was taken in the name of Wotherspoon with the assent of the plaintiff.
Wotherspoon being in need of money to pay a judgment against him, applied to the defendant McTavish for a loan, which he refused to give, unless the membership in the Cotton Exchange was assigned to him as security for such loan, which Wotherspoon agreed to do. McTavish swore that he was not aware that plaintiff had any interest in the certificate.
The court found that Wotherspoon represented to Mc-Tavish that he was the absolute owner of the seat in his individual right, and had a certificate of the fact in his own *419 name; that McTavish believed that fact, and had no knowledge that Wotherspoon was not the owner of said seat, or that plaintiff claimed to have any interest or ownership therein ; that on the 14th of February, 1883, McTavish loaned to Wotherspoon six United States bonds, and at the same time Wotherspoon assigned the said seat, standing in his name, to McTavish as security for the return thereof; that two of the bonds were not returned, and the other four were returned on McTavish paying the sum of $2,877.54, the amount which Wotherspoon liad borrowed thereon. As matter of law, the court found that defendant McTavish should reassign the membership on being paid the amount due from Wotherspoon.
An interlocutory judgment was thereupon entered adjudging McTavish a bona fide holder of the seat in the Cotton Exchange, and directing the referee appointed by said judgment, to ascertain and report the amount due to McTavish from Wotherspoon, and that upon payment of the sum thus found due, McTavish reassigned the certificate of membership to the receiver appointed by said judgment.
Plaintiff claims that this was error, as the defendant McTavish has not pleaded that he was a bona fide holder of the seat without notice ; but I do not think he can now raise that questidn. Defendant McTavish without objection was allowed to testify that lie loaned the bonds on the faith of the certificate, without knowledge of the interest of the plaintiff,, and no motion for judgment was made on the ground stated. If plaintiff desired to raise that question, he should have done so at the trial, so that if necessary, the pleadings could have been amended, and it is too late to make such an objection on appeal.
But on the facts proved and found by the court below, I think that judgment appealed from was right.
That the purchaser of a chose in action (except negotiable paper), or other personal property, takes no better title to the thing purchased than his vendor has, is a well-settled rule of the common law, and McTavish could get from Wotherspoon no better title to the membership than *420 Wotherspoon had, as against any one who could show a better title to the property.
The question is has the plaintiff any title to or interestin the seat in the Exchange that he can set up as against Mc-Tavish. There is no different rule as respects a chose in action (excepting negotiable paper), and personal property of any kind. A purchaser of such a chose in action takes it subject to all the equities between his vendor and the obligor, or, in other words, the purchaser gets just what his vendor had to sell and nothing more.
' But there is also another principle of the common law which is equally well established, and that is, that where a person makes a representation of the existence of a fact, and another person, without notice, acts on the faith of such representation, the person making the representation is estopped from denying the existence of such facts. One of the illustrations of this principle is, that when “ the true owner of property holds out another as, or allows Mm to appear as the owner, or as having full power of disposi-. tion over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the acts of the real owner which preclude him from disputing as against them, the existence of the title or power, which through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance” (McNeil v. The Tenth National Bank, 46 N. Y. 329). The mere possession of the property is not sufficient, there must be more than the bare naked possession. There must be conferred on the apparent owner, some indicia of title, so as to make it appear that the absolute title in the property vests in him. As Judge Grover says in Moore v. Metropolitan National Bank (55 N. Y. 48), “No one pretends that mere possession (of non-negotiable elipses in action) is any more evidence of the title in the possession than is that of a horse.”
*421 The question to be determined here is, did the plaintiff confer on Mr. Wotherspoon such an apparent title to the exchange seat as to bring him within the rule %
The' seat was bought by the firm, and with the assent of the plaintiff was taken in Mr. Wotherspoon’s name; The certificate was in the possession of the firm, and its terms must have been familiar to plaintiffs. That certificate, which was the evidence of ownership, declared that George Wotherspoon was a member of the Exchange and that “ this certificate may be transferred upon the books of the Exchange.” This clothed Wotherspoon with the apparent absolute title to the seat. He owned it so far as appeárances went, as much as Goodyear & Co. did, the certificate of stock in McNeil v. Tenth National Bank, (supra), or as Miller did the certificate of indebtedness in Moore v. Metropolitan National Bank (supra).
That McTavish delivered the bonds to Wotherspoon on the faith of this apparent ownership can not be doubted Wotherspoon told him he owned the seat, and would assign it to him as security. McTavish then gave Mr. Kings ford seven government bonds and instructed him not to deliver them, unless he, Kingsford got the certificate. Mr. Kingsford thereafter delivered the bonds, and got the certificate with an assignment to McTavish.
McTavish thus parted with his bonds on the faith of the title apparently conferred on Wotherspoon by this certificate, and as this apparent ownership was in Wot'her-spoon with the assent of plaintiff, the case comes within the principle of the cases above cited.
In the cases relied on by plaintiff, the owner of the property conferred on the person who attempted to dispose of it, the possession only, as in Ballard v. Burgett, (40 N. Y. 314), or in some way limited the apparent ownership or power of disposition, or there were disputes as to the equities between a mortgagor and the assignees of the mortgagee. Of course, no representation that the mortgagee made could affect the rights or equities of the mortgagor, and, as said in Green v. Warnick (64 N. Y. 225), “ The *422 estoppel can only operate against the party whose act created it,' and cannot affect the rights of other persons.” But in this case, the apparent title was, with the assent of plaintiff, in Wotherspoon, and McTavish having loaned the bonds on the faith of such apparent title, I think the plaintiff is estopped from claiming that Wotherspoon was not the owner of the seat.
The fact that one of the witnesses testified that seats in the Exchange are not bought and sold, is met and contradicted by the certificate itself, “ this certificate of membership may be transferred on the books of the Exchange,” and whatever right this transfer may give McTavish, he is entitled to such right as security for his loan.
The testimony of McTavish that he was not aware of the claim of plaintiff to an interest in the seat, justified the finding of the court. The question was, “ Did you know at the time, or had you ever known that Mr. Allien had any claim in any way to the certificate ?” and the answer was, “ I was not aware of it.” This was in effect that he was not aware that plaintiff had any claim to the seat.
This I think disposes of the objection taken by the appellant, and lam of the opinion that the judgment appealed from should be affirined with costs.
Sedgwick, Ch. J., concurred.