ALBANY,
Feb. 1828.

JACKSON, *ex dem.* HYER and others *against* VAN VALKEN-
BURGH.

Jackson
v.
Van Valken-
burgh.

EJECTMENT for lots Nos. 21 and 23, in the village of Lit-
tle Falls, town and county of Herkimer; tried at the cir-
cuit in that county, on the 13th of September, 1826, before
WILLIAMS, C. Judge; when a verdict was taken for the
plaintiff, subject to the opinion of this court upon a case.

The cause was argued here by

*Jas. M'Kown*, for the plaintiff, and

*S. Beardsley*, contra.

The case is fully stated in the opinion of the court, which
was delivered by

WOODWORTH, J. John McCombs executed a mortgage
of the premises in question to Fuller and Petree, on the
7th of January, 1823, which was recorded on the 28th of
January. On the 23d of July, 1825, Fuller and Petree as-
signed the mortgage to the lessors of the plaintiff and one
Brimmer, who were partners residing in the city of New
York. The assignment was recorded January 9th, 1826.

The assignees, on the 27th of July, 1825, gave notice of
sale of the mortgaged premises, (under the power in the

The statute,
sess. 45, ch.
245, s. 1, de-
claring that a
mortgage shall
be considered
as recorded
from the time
when received
by the clerk,
does not apply
to mortgages
delivered for
registry before
the act went
into effect.

Where a
mortgage is
given, the
mortgagee be-
ing expressly
informed of the
existence of a
previous mort-
gage, and un-
derstanding
that he is to
take his mort-
gage subject to
the previous
one, he is af-
fected by this
notice, though
the previous
mortgage be
not registered.

But his *bona fide* assignee, without notice, is not affected by the notice to the mortgagee.

Notice to the agent or attorney who is employed to obtain the assignment, would be notice to the assignee.

But the notice, whether to the principal or the attorney, must be full and clear.

A notice to supply the place of registry, must be more than barely sufficient to put the party on inquiry.

Where the attorney had heard generally of a mortgage, previous to one which he was directed to procure an assignment of; but, on searching, found no registry of it, though he saw a previous absolute assignment of the mortgagor's interest among the deed papers at the clerk's office, which had been recorded (probably by the mistake of the clerk) in the book of deeds, there being in fact a simultaneous defeasance, which gave it the character of a mortgage; *held*, that this was not a sufficient notice to supply the place of a proper registry; and that the assigned mortgage should take preference.

One took a mortgage, with notice of a previous unregistered mortgage. He assigned to one, who had no such notice, for valuable consideration. *Held*, that the assignee took, discharged of the previous mortgage.

In computing time given by a statute, (as for advertising 6 months,) both the first and last days are never reckoned inclusive.

ALBANY,
Feb. 1828.
———
Jackson
v.
Van Valken-
burgh.

mortgage,) for the 10th of January, 1826, the notice *being put on the court house door, July 30th, 1825. The sale was accordingly made on the 10th of January, and conveyances executed.

The foreclosure was irregular. There was not a notice of 6 lunar months, unless the day of publication and sale are both included in the computation. This is never done when the statute gives a certain number of months for the performance of any act. Beside, the notice on the court house door was less than six months upon any calculation.

If the lessors of the plaintiff can recover, it must, then, be upon the strength of the mortgage assigned to them.

Brimmer died before the commencement of this suit. The lessors are the surviving assignees.

The action was commenced against McCombs, the mortgagor. The present defendant was substituted, by rule of this court, he stipulating to rely only on his title acquired under another and previous mortgage, given to him by McCombs.

The defendant proved the absolute assignment of a lease to McCombs, (his title to the premises in question) from McCombs to the defendant, dated November 26th, 1821; and a defeasance from the defendant to McCombs of the same date, declaring that the assignment should be void on the payment of a certain sum. The assignment and defeasance were recorded (probably by mistake) in the book of deeds, before the execution of the mortgage to Fuller and Petree; but were not recorded in the book of mortgages, until the 29th day of October, 1825.

Mr. O. G. Otis, attorney at law, testified that these two instruments were drawn by him, while he was the partner of Mr. G. H. Feeter, another attorney; that he delivered them to the clerk of Herkimer county, indorsed to be recorded as a mortgage; and that at the time of giving the mortgage to Fuller and Petree, they well knew of the previous mortgage to the defendant; that the matter was talked over, and it was expressly understood that their mortgage was subject to that of the defendant.

It appeared by the mortgage assigned to the lessors of

the plaintiff, that Fuller and Petree took the premises in question, *subject to the same condition upon which Mc-Combs held them. The lease to McCombs, which was his title to the lots, contained a covenant to pay a rent, with a clause of re-entry for non-payment, and also a covenant to pay taxes, &c. The mortgage seems to have had reference to these covenants.

Mr. Feeter testified that the lessors of the plaintiff wrote to him, directing him to take the assignment. Before this time, he had heard that the defendant held a mortgage.

He supposed that the assignment from McCombs to the defendant, had been drawn by Mr. Otis; but he had not seen the papers, nor been informed of them. He thought that Mr. Otis had not any thing to do with taking the assignment from Fuller and Petree: that writings were sometimes done by one of the firm, and not known to the other. Before he (Mr. F.) took the assignment, he searched the clerk's office, to see if there were any mortgages or other liens on the land: and not finding any recorded, concluded the mortgage was good; and believed he wrote his clients accordingly: and that they probably acted on his advice. He took the assignment. Before this, he knew of the absolute assignment in the book of deeds; saw it in the clerk's office, with an indorsement that it was recorded in the book of deeds; but he did not see the defeasance. He thought he had never communicated to his clients, any information of the existence of the defendant's mortgage; that he had no other knowledge about it than as before stated, unless it might have been information received of Fuller and Petree as counsel for them.

The judge decided correctly, that the witness should not state facts communicated by them to him as counsel.

A verdict was taken for the plaintiff, subject to the opinion of the court.

It is contended by the defendant's counsel, that the receiving of the defendant's mortgage by the clerk, was, in law, a recording of the mortgage. The act of April 17th, 1822, (sess. 45, ch. 245, s. 1,) declares that every mortgage entitled to be recorded, shall be considered as re-

corded from the time it shall be delivered; but the act *did not take effect until after the 1st day of October, 1822, so that, without deciding on the construction of the statute, it may safely be affirmed that it does not apply to this case; the mortgage of the defendant having been executed, and delivered to the clerk before the passing of the act. The statute was not intended to operate on pre-existing cases.

The defendant cannot raise the objection that notice to quit should have been given. The tenant in possession is not now a party. The rule admitting the defendant, confines his defence to title acquired under the mortgage from McCombs to him. The notice to quit has no connection with the question whether the mortgage, or the title derived under it, is valid.

I think it sufficiently appears that Fuller and Petree the mortgagees, were affected by notice.

The only remaining question is, how far notice was brought home to the lessors of the plaintiff? There is no reason to doubt the fairness of the transaction, on their part. They are assignees for a valuable consideration; and it cannot be inferred, from the evidence, that they had any actual knowledge of the prior incumbrance. Mr. Feeter concluded the mortgage was good, and wrote accordingly. The notice, then, upon which the defendants must rely, is constructive; the knowledge or information which Mr. Feeter had, who acted as their attorney in taking the assignment. He undoubtedly acted in good faith; although he may have erred in his legal conclusions. He states that he had heard the defendant had a mortgage; but on searching the records of mortgages, he found none. He saw in the office the assignment of the lease among the deed papers, indorsed as recorded in the book of deeds; but did not see the defeasance. The assignment of the lease appeared to have been recorded in the proper place. This fact, alone, was not enough to put a party on inquiry.

The question here is, whether Mr. Feeter, the agent, is chargeable with notice? Though the principal may not have notice, he is civilly responsible for the acts of his agent. (4 T. R. 30.) The knowledge in Fuller and Petree of

*the prior mortgage, is immaterial; for it is well settled, that if one affected with notice, convey to another without notice, the latter is as much protected as if no notice had ever existed. (*Jackson* v. *Given,* 8 John. 137.)

The inquiry is, how particular and certain must the notice be, which shall be deemed equivalent to registry? In the case of *Dey* v. *Dunham,* (2 John. Ch. Rep. 182,) chancellor Kent observed, that "the notice, to break in upon the registry acts, must be such as will, with the attending circumstances, affect the party with fraud. The ground of the numerous decisions seems to be the actual fraud of the party in taking a second conveyance, and with knowledge of the first, and with intent to defeat it." In that case it was held that a notice which is to put a party on inquiry, is not sufficient to break in upon the policy and express provisions of the act. Lord Alvanley, in *Jolland* v. *Stainbridge,* (3 Ves. 478,) observes, "The person who takes subsequently, must know exactly the situation of the prior deed, and have meant to defraud." Ld. Hardewicke in *Hine* v. *Dodd,* (2 Atk. 287,) says that nothing short of fraud or clear and undoubted notice, would do. This case is cited with approbation, (8 John. 141.)

The case of *Jackson* v. *Burgott,* (10 John. 457,) proceeds on the same ground. Actual notice was held necessary. So also in *Dunham* v. *Dey,* (18 John. 555,) on appeal, the question what constitutes notice, was examined. Platt, J., who delivered the opinion of the court, observed that "where the proof of notice is clear and certain, it is, *per se,* evidence of fraud in him who attempts to defeat a prior incumbrance by setting up a subsequent deed."[1]

[1] The registry of a mortgage, given to secure three thousand dollars, but by the mistake of the clerk, registered for three hundred dollars, is notice to subsequent *bona fide* purchasers, to the extent only of the sum expressed in the registry. *Beekman* v. *Frost,* 18 Johns Rep. 544.

An unauthorized registry of a mortgage, or one registered without any previous proof or acknowledgment, would not, it seems, be notice to a subsequent purchaser. Ib. 300.

Equity gives no assistance against a purchaser for a valuable consideration, without notice. But wherever actual notice of the true sum in the mortgage can be brought home to the purchaser, he is, from that time, so far as the former purchase is left incomplete, either as to the deed on the one hand, or

If these rules be applied to the present case, the notice was defective. It may have answered to put a person on inquiry, in a case where that species of notice is sufficient; but we have seen that, to supply the place of registry, the law proceeds a step farther; and as it appears to me, upon the most substantial reasons; for if the second conveyance

as to the payment on the other, bound by the prior equitable lien; and all subsequent payments by him, are made in his own wrong, so far as the rights of the mortgagee are concerned. Ib.

Where T., being the owner of a lot of land, gave mortgage on the same to H., who neglected to have the mortgage recorded, and afterward, and before the mortgage was recorded, T. conveyed the mortgaged premises to A., who had no notice of the mortgage, in payment of a precedent debt; held, that A. was a *bona fide* purchaser for a valuable consideration, within the meaning of the recording act, so as to give him a preference over the prior unregistered mortgage. *Dickerson* v. *Tillinghast*, 4 Paige, 215.

To constitute a *bona fide* purchaser for a valuable consideration, within the meaning of the act, the purchaser must, before he had notice of the prior equity of the holder of an unrecorded mortgage, have advanced a new consideration for the estate conveyed, or have relinquished some security for a pre-existing debt due him. The mere receiving of a conveyance in payment of a pre-existing debt, is not sufficient. Ib.

Mere silence on the part of a prior incumbrancer, who witnesses a subsequent conveyance or mortgage, knowing its contents, is not sufficient to affect his right. Actual fraud must be charged and proved; such as false representation, or denial upon inquiry. And the burden of fraud lies on the purchaser or subsequent mortgagee. *Brinkerhoff* v. *Lansing*, 4 Johns. Ch. Rep. 65.

A judgment creditor is not affected by notice of a prior unregistered mortgage, and is in this respect distinguished from the vendee of the mortgagor himself. Therefore, the court will not enjoin such creditor from selling the mortgaged premises under his execution. *Davidson* v. *Cowan*, 4 Dev. Eq., 470.

The grantee of a second mortgage of personal property recorded in time, with notice of a prior mortgage which was not duly recorded, is bound by the equitable rights of the first mortgagee, unless, upon inquiry into the nature of his claim, the first mortgage had led him to believe that his incumbrances were removed; in which case, equity would never interpose to invalidate his legal title. *Hudson* v. *Warner*, 2 Har. & Gill, 415.

A party setting up a prior legal right in an answer, is not bound to deny notice of a subsequent lien or interest, unless such notice be distinctly alleged against him. The rule is different where one is resisting a prior title, on the ground that he purchased in good faith, without notice. *King* v. *McVickar*, 3 Sand. Ch. Rep. 192 Am. Ch. Dig, vol. 3, tit. *Mortgage*, p. 40, et seq., Nos. 186, 187, 188, 199, 200, 219, 222, 223, 224.

is not regarded as *bona fide*, because, in consequence of no- ALBANY, Feb. 1828.
tice, it is tainted with fraud, that imputation *ought not to ————
rest on slight ground; but be supported by evidence clear
and explicit.

Jackson v. Van Valken- burgh.

It is true that Mr. Feeter heard there was a mortgage; but, for aught that appears, he was not informed what land was included within it, what was the amount, or when payable. Although a partner of Mr. Otis, he had no knowledge of the giving of the mortgage by McCombs, nor the facts that were at that time stated. When applied to for the purpose of taking an assignment, he searched the clerk's office, and found no registry in the book of mortgages, although several years had elapsed since the mortgage of the defendant was given. This fact, under the circumstances, was well calculated to remove any apprehension of a previous mortgage, and induce him to conclude that the assignment was of the oldest, and indeed the only mortgage. He did so conclude, and acted upon the conclusion, as it appears, in good faith, and without any intention to defraud. It is admitted, that when he made the search, he saw the absolute assignment of the lease; and had the claim of the defendant been, that he held not a mortgage, but an absolute lease of the premises, and so the fact had been, in that case, perhaps, the notice would have been sufficient as to the existence of the prior deed. Here the claim is not of an absolute conveyance; but of one in the nature of a mortgage, in consequence of the defeasance that accompanied it. The notice is confined to this; and if insufficient to charge the lessors of the plaintiff with notice of a mortgage, their assignment must prevail. The fact that Mr. Feeter saw the absolute conveyance without any defeasance, goes rather to strengthen the conclusion at which he arrived that there was no mortgage.

On the whole, I am of opinion that notice of the defendant's mortgage was not sufficiently made out, to deprive the lessors of the plaintiff of the benefit of their lien; and, consequently, that the plaintiff is entitled to judgment.

Judgment for the plaintiff.